UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Joseph M. McKnight, Jr.,** | ) | Civil Action No.: 4:24-cv-5037-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **USAA Federal Savings Bank,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Joseph M. McKnight, Jr., for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681s-2(b), which are two of the cornerstone

1

provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under 15 U.S.C. §1681p and 28 U.S.C. §1331, and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business here.

## PARTIES

9. Plaintiff, Joseph M. McKnight, Jr., is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant USAA Federal Savings Bank ("USAA") is a Texas entity that may be served with process by way of its President and CEO, Wayne Peacock, at its corporate headquarters, USAA McDermott Building, 9800 Fredericksburg Rd., San Antonio, TX 78288. Defendant USAA was in all respects and at all times relevant herein doing business in the state of South Carolina.

## FACTUAL ALLEGATIONS

11. In August 2022, Plaintiff received a collection call from USAA concerning an alleged credit card debt he owed. Plaintiff informed the caller he did not, nor had he ever had a credit card issued by USAA. Troubled by receiving a collection call from Defendant, Plaintiff obtained copies of his credit reports and discovered they were rife with fraudulent accounts for loans, credit cards, and utility bills that had been opened in his name without his consent or knowledge.

12. Specifically, Plaintiff's August 26, 2022, Experian credit report was reporting a USAA Savings Bank credit card, Acct. No. 427082XX (hereinafter referred to as "the Account") as a closed account, with a balance of $7,723, a past due amount of $896, and as 150 days past due. Plaintiff never opened an account with Defendant, nor did he ever apply to have a credit card issued to him by Defendant.

13. On or about August 29, 2022, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

14. In September 2022, Plaintiff learned that his estranged wife, Mary Lee McKnight, had opened numerous accounts and loans in his name without his permission.

15. On September 13, 2022, Plaintiff filed an Identity Theft Intake Form with the South Carolina Department of Consumer Affairs.

16. On September 14, 2022, Plaintiff filed a police report with the Florence County Sheriff's Office concerning the fraudulent accounts appearing on his credit reports.

17. On or about September 28, 2022, Plaintiff sent a written dispute letter to Defendant via priority mail. In his letter, Plaintiff informed Defendant he had been the victim of identity theft and that an Account had been opened with Defendant in his name which he did not open, nor authorize to be opened. With his letter, Defendant included a copy of the Identity Theft Report, Florence County Sheriff's Department police report, South Carolina Department of Consumer Affairs Identity Theft Intake Form, a copy of the Experian 8/26/22 credit report page reflecting the USAA Account, and a copy of his South Carolina Driver's License.

18. Plaintiff never received a response to his letter from Defendant.

19. Thereafter, Plaintiff required surgery which kept him out of work on disability from October 12, 2022, through April 1, 2023.

20. Once Plaintiff was well enough to go back to work, he again began working to correct all of the fraudulent accounts, including this Account, appearing on his credit reports.

21.  On November 15, 2023, Plaintiff obtained a copy of his Experian credit report, which showed Defendant was continuing to report the Account as belonging to Plaintiff, as a charged off account with $7,845 written off, and a past due amount of $7,845. Additionally, Defendant was not reporting the Account as disputed.

22.  On November 15, 2023, Plaintiff also obtained a copy of his Equifax credit report. On this report, Defendant was reporting the Account as a charged-off account belonging to Plaintiff with a past due balance of $7,845.

23.  That same day, Plaintiff also obtained a copy of his TransUnion credit report. Again, Defendant was reporting the Account as a charged off account belonging to Plaintiff, with a past due balance of $7,845.

24.  On or about November 29, 2023, Plaintiff received a letter from Sarma Collections Incorporated, a debt collector. This letter stated that Sarma Collections was in receipt of Plaintiff's request for verification of the Account and that they had contacted their client, USAA Savings Bank and Defendant had confirmed Plaintiff's name, identifying information, and the amount owed was accurate. As a result, Sarma Collections concluded Plaintiff was the correct consumer for the Account.

25.  On or about December 5, 2023, Plaintiff sent a written dispute to Experian ("First Experian Dispute") stating the Account was a fraudulent account opened in his name without his knowledge, and asked that it be removed from his credit report. With his dispute, Plaintiff included his name, address, date of birth, and Social Security number. Experian received Plaintiff's dispute on December 9, 2023, and forwarded same to Defendant.

26.    On or about December 5, 2023, Plaintiff sent a written dispute to Equifax ("First Equifax Dispute") stating the Account was a fraudulent account opened in Plaintiff's name without his knowledge and asked that it be removed from his credit report. With his dispute, Plaintiff included his name, address, date of birth, and Social Security number. Equifax received Plaintiff's dispute on December 8, 2023, and forwarded same to Defendant.

27.    On or about December 5, 2023, Plaintiff sent a dispute letter to TransUnion ("First TransUnion Dispute"). In his letter, Plaintiff informed TransUnion he had been the victim of identity theft and fraud, and that he had learned that his estranged wife had opened numerous accounts and loans in his name without his permission. Plaintiff disputed the Account as a fraud account, opened in his name without his knowledge, and asked that it be removed from his credit report. TransUnion received Plaintiff's dispute on December 8, 2023, and forwarded same to Defendant.

28.    On or about December 11, 2023, Plaintiff received a letter from Equifax requesting additional information to verify his identity and address, which Plaintiff provided via certified mail on January 26, 2024. Equifax received the requested documents on January 29, 2024.

29.    On or about December 13, 2023, in response to Plaintiff's First Experian Dispute, Experian sent Plaintiff correspondence stating it didn't appear to them that Plaintiff had sent the dispute letter and, therefore, they would not be taking any action on his alleged request.

30.    On or about December 14, 2023, Equifax sent Plaintiff a letter stating they had added an initial fraud alert on his Equifax credit file.

6

31. On or about December 14, 2023, Plaintiff received another letter from Sarma Collections Incorporated. In its letter, Sarma stated they were in receipt of Plaintiff's dispute of the Account as fraudulent. In response, Sarma forwarded the information to Defendant's Fraud Department for investigation, and Defendant had responded that it had reviewed the information and "determined the account not to be fraudulent."

32. On or about January 5, 2024, Plaintiff received Equifax's Investigation Results, wherein Equifax stated it had researched the Account and that the Account had been deleted from Plaintiff's credit file.

33. On or about January 5, 2024, Plaintiff received TransUnion's Investigation Results, wherein TransUnion informed Plaintiff that it had investigated the Account information Plaintiff disputed and Defendant verified the disputed information as accurate. As a result, the disputed Account continued to be reported on Plaintiff's TransUnion credit file.

34. In January 2024, in response to Experian's December 13, 2023 letter, Plaintiff made numerous attempts to reach Experian by phone to inform them that he had in fact sent the dispute letter. However, Plaintiff was never able to speak to anyone

35. On or about February 1, 2024, Plaintiff sent a second dispute to TransUnion stating the Account had been fraudulently opened in Plaintiff's name without his permission ("Second TransUnion Dispute"). With his dispute, Plaintiff again included his name, address, date of birth, and Social Security number. TransUnion received the Second Experian Dispute on February 6, 2024.

36. On or about February 9, 2024, TransUnion sent Plaintiff correspondence stating it would not be reinvestigating his dispute of the Account as they had previously investigated

7

the disputed Account and Defendant had verified the Account as accurate.

37. On or about March 22, 2024, Plaintiff sent Experian a second dispute by certified mail ("Second Experian Dispute"). In his letter, Plaintiff again informed Experian the USAA Account was a fraud account opened in Plaintiff's name without his knowledge and asked that it be removed from his credit report. Plaintiff included a copy of his driver's license with his letter. Experian received this dispute on March 25, 2024, and thereafter forwarded same to Defendant.

38. On or about March 22, 2024, Plaintiff sent Equifax another dispute via certified mail ("Second Equifax Dispute"). In his letter, Plaintiff again informed Equifax that he had been the victim of identity theft and fraud, and that he found out his estranged wife had opened numerous accounts in his name without his permission. Plaintiff stated the USAA Account was not his account, that it was a fraud account opened in his name without his knowledge and asked it to be removed from his credit report.

39. On or about March 22, 2024, Plaintiff sent TransUnion a third dispute via certified mail ("Third TransUnion Dispute"). Plaintiff again stated that he had been the victim of identity theft and fraud, and that numerous accounts and loans had been opened in his name by his estranged wife without his permission, including the USAA Account. With his dispute, Plaintiff included a police report documenting the identity theft. Upon receipt, TransUnion forwarded same to Defendant.

40. On or about April 18, 2024, Plaintiff received the results of TransUnion's alleged investigation into the Third TransUnion Dispute, wherein TransUnion informed Plaintiff that Defendant had verified the Account as belonging to Plaintiff and updated the historical

data.  As a result, the fraudulent Account continued to be reported on Plaintiff's TransUnion credit report as belonging to Plaintiff.

41.    On or about April 25, 2024, Plaintiff sent another letter to Experian via certified mail ("Third Experian Dispute"), again informing Experian that he had been the victim of identity theft, and that the USAA Account was a fraud account opened in his name without his knowledge.  Plaintiff included a copy of his driver's license with his dispute letter. Experian received this dispute on April 29, 2024, and thereafter forwarded same to Defendant.

42.    To date, the Defendant continues to report the derogatory Account as belonging to Plaintiff  to the credit reporting agencies as well as third parties.

43.    From September 2022 through the present, Defendant has reported false, libelous, inaccurate, and defamatory information regarding the Plaintiff to the national credit bureaus and to numerous third parties, including Sarma Collections. While Defendant was reporting the fraudulent Account as belonging to Plaintiff, said information was provided to and/or viewed by Verizon Wireless, American Express, JPMCB Card, Reprise Financial, Axcess Financial/CNGO, Elan Fin Svcs, Sarma Collections Inc, Revco Solutions Inc, Mercantile Adjustment Bur, Natl Credit Adjusters, NCB Management Services, Relay Tallahassee ME via Ectallahassee Mem HC, and Alltran Financial LP FO.

44.    Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-0952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

45. The Plaintiff adopts the averments and allegations of paragraphs 11 through 44 hereinbefore as if fully set forth herein.

46. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information said Defendant had provided to a consumer reporting agency.

47. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

48. Defendant negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to the consumer reporting agencies.

49. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agencies.

50. Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.

51. As a result of Defendant's violations set forth above, the Plaintiff suffered damage to his credit and credit reputation, was denied credit, and lost credit opportunities. Additionally, Plaintiff suffered humiliation, anxiety, stress, loss of sleep, anger, worry, physical sickness, headaches, and mental anguish. Plaintiff has also suffered damages for

attorneys' fees, certified mail expenses, and other out of pocket losses.

## COUNT TWO
### (Fair Credit Reporting Act)

52. The Plaintiff adopts the averments and allegations of paragraphs 11 through 51 hereinbefore as if fully set forth herein.

53. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information Defendant had provided to a consumer reporting agency.

54. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

55. Defendant willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to a consumer reporting agency.

56. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

57. Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the account the subject of this action was inaccurate, incomplete, false, and misleading.

58. As a result of Defendant's violations set forth above, the Plaintiff suffered damage to his credit and credit reputation, was denied credit, and lost credit opportunities. Additionally, Plaintiff suffered humiliation, anxiety, stress, loss of sleep, anger, worry,

physical sickness, and mental anguish. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1).

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3);

D. For this matter to be heard by a jury; and

E. For such other and further relief as this Court deems necessary and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Of Counsel

12

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
(Via Restricted Delivery)

USAA Federal Savings Bank
Wayne Peacock – President and CEO
USAA McDermott Building
9800 Fredericksburg Rd.
San Antonio, TX 78288